IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN Z. REYES-ORTIZ,**

   **Plaintiff,**

   **v.**                                                      Civil No. 09-1933 (GAG)

**MCCONNELL VALDES, et al.,**

   **Defendants.**

**OPINION AND ORDER**

Plaintiff Carmen Z. Reyes-Ortiz ("Plaintiff") seeks redress for alleged discrimination and harassment on the basis of age, sex, gender, and perceived disability, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; and Section 1981a of the Civil Rights Act of 1991 ("Section 1981a"), 42 U.S.C. § 1981a. Plaintiff also invokes the supplemental jurisdiction of the court to adjudicate her claims under Puerto Rico state laws, to wit: Puerto Rico Law 100 of June 30, 1959 ("Law 100", P.R. Laws Ann. tit. 29, §§ 146 et seq.; Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. Tit. 29, §§ 185a et seq.; and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141, 5142. Plaintiff filed this claim against her employer, McConnell Valdes LLC ("McV"), as well as the Manager of Human Resources for McV, Denise Aponte ("Aponte"), the Office Services Supervisor for McV, Rosin Rivera ("Rivera"), and Plaintiffs' immediate supervisor, Betzaida Velez ("Velez").

Pending before the court is a motion to dismiss the complaint against co-defendants Aponte, Rivera and Velez (Docket No. 11), which has been timely opposed by Plaintiff (Docket No. 16). For the reasons set forth herein, the court **GRANTS in part and DENIES in part** Defendants' motion to dismiss.

## I.       Standard of Review

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal 129 S. Ct. at 1950.

## II.      Relevant Factual Background as Alleged in the Complaint

Plaintiff alleges that during her tenure as an employee at McV she experienced incidents of age, sex, gender and perceived disability discrimination in her workplace. She avers that the incidents were so severe and offensive that they created a hostile work environment, altering her work conditions and ending in her constructive discharge.

Plaintiff was fifty-seven years old during the relevant time period and also at the time the complaint was filed. She held the position of office clerk in the filing room at McV since 1996,

when her previous employer, the former lawfirm of Ledesma, Palou & Miranda ("LPM"), merged with McV. During LPM's move to McV's offices in June of 1996, Plaintiff fractured her meniscus. Several years later, in 2004, Plaintiff was diagnosed with osteoarthritis in her right knee and received an adjudication of a 10% disability. Despite the disability determination, Plaintiff did not seek reasonable accomodation at McV because she could continue to perform all of the essential duties and functions of her office clerk position in the filing room.

On August 20, 2008, Plaintiff was unexpectedly summoned to a conference room by McV through defendants Aponte, Velez, and Rivera. In that meeting, Aponte advised Plaintiff that she would be transferred from her office clerk position in the file room to a "runner" position in the department of office services, under the pretext of an internal organization and "so Plaintiff would not have to overexert herself." (Docket No. 1, ¶ 31.) Plaintiff had not requested a change in position from her employer. The duties of a "runner," or internal delivery person, entail walking throughout the multi-floored offices of McV every fifteen minutes while pushing a cart containing correspondence and documents, among other things.

Plaintiff was immediately overcome by anxiety and asked for a glass of water, which was provided by Aponte. In addition, Velez fetched Plaintiff's blood pressure medication, but Plaintiff avers that this defendant avoided looking at her face throughout, "in what could only be interpreted as an implied recognition of McV's discriminatory action." (Docket No. 1, ¶ 32.) Back at her home, Plaintiff was extremely distressed by defendants' intentions. At some point, she was visited by a male employee, Mario Urrutia ("Urrutia"), who informed her that he had been transferred to the filing room. The next day, August 21, 2008, Plaintiff was undergoing "great mental anguish, pain, suffering, humiliation, frustration and anxiety." (Docket No. 1, ¶ 34) She visited her general physician, who found that she had high blood pressure and anxiety, and ordered Plaintiff to rest and referred her to a psychologist. The psychologist prescribed medications and also ordered Plaintiff to rest.

Plaintiff returned to work on August 29, 2008 and was met by defendant Aponte, who reiterated to Plaintiff that she would be transfered to the new position. Plaintiff then explained to Aponte that she had a condition in her knee that would impede her from performing the duties

required of an individual in the runner position, and provided Aponte with a medical evaluation in that respect.

Between September 1st and 5th, 2008, Plaintiff continued to work "under extreme duress and pressure." (Docket No. 1, ¶ 36.) Plaintiff alleges that defendant Velez "would stop by [her] area on a daily basis, and when confronted by plaintiff, she would state that she could not talk about plaintiff's transfer." (Id.) On September 5, 2008, Plaintiff was summoned to the Human Resources department by defendant Aponte and was given a letter confirming her transfer from office clerk in the filing room to the runner position in the office services department. Defendant Aponte "hastily dispatched plaintiff with the pretext that she was too busy because she would be leaving soon on maternity leave." (Docket No. 1, ¶ 37.) Plaintiff alleges she was greatly affected and anguished upon service of the letter, to the point that she could not concentrate on performing her job and was constructively forced to leave by McV and the other co-defendants. "She felt discriminated, treated unequally and rejected by her employer." (Docket No. 1, ¶ 38.) Plaintiff tried to talk to defendant Velez, but could not find her, so she sent Velez an e-mail indicating that she had to leave the workplace due to the stress of the situation.

On September 11, 2008, Plaintiff was admitted into the partial hospitalization program at San Juan Capastrano. She was released on September 29, 2008 and referred to a psychiatrist. Plaintiff continued to rest until October 6, 2008. Meanwhile, defendants did not eliminate Plaintiff's office clerk position, but instead replaced Plaintiff with Urrutia, a male younger than forty years of age. Urrutia was transfered from the messenger department.

On September 8, 2008, Plaintiff filed a complaint of discrimination with the EEOC and the Puerto Rico Department of Labor and Human Resources' Anti-Discrimination Unit. Plaintiff amended her EEOC complaint on March 3, 2009. On June 17, 2009, the EEOC notified Plaintiff of the termination of any further proceedings relating to her charge of employment discrimination and of her right to sue. Plaintiff filed her complaint in this case (Docket No. 1) on September 15, 2009.

**III.   Discussion**

Defendants argue in their motion to dismiss that (1) the Title VII, ADEA, ADA, and Law

**Civil No. 09-1933 (GAG)**                                5

80 claims should be dismissed against co-defendants Aponte, Rivera, and Velez in their personal capacity, because none of these statutes provide for invidual liability; (2) Plaintiff's Section 1981a claim should be dismissed because Plaintiff does not have an independent cause of action under said statute; (3) Plaintiff's claim under Articles 1802 and 1803 of the Puerto Rico Civil Code should also be dismissed because these dispositions do not provide for an independent cause of action under the facts alleged in the complaint; and, (4) Plaintiff's claims against co-defendants Aponte, Rivera, and Velez under Law 100 are time-barred.

### A.    Individual Liability

As argued by Defendants, and conceded by Plaintiff in her opposition, the First Circuit has held that there is no individual employee liability under Title VII. See Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009).  Plaintiffs also concede in their opposition that whether or not there is individual liability under the ADEA or the ADA remains an open question in the First Circuit.  This district, however, has followed the majority of circuits that have confronted the issue and held that no personal liability can attach to employees under the ADEA or the ADA. See, e.g., Diaz v. Antilles Conversion & Export, Inc., 62 F. Supp. 2d 463, 465 (D.P.R. 1999) (citing Rodriguez v. Puerto Rico Marine Management, Inc., 975 F. Supp. 115, 120 (D.P.R. 1997)) (ADEA); Pagan-Maldonado v. Centennial Puerto Rico Communication Corp., 2009 WL 4782369, *11 (D.P.R. 2009) (ADEA); Segarra Santiago v. Hernandez, 2006 WL 572338, *4 (DP.R. 2006) (citing, *inter alia*, Vicenty Martell v. Estado Libre Asociado de Puerto Rico, 48 F.Supp.2d 81, 88 (D.P.R. 1999)) (ADA);  Velez Nieves v. Microsoft Caribbean, Inc., 2006 WL 1805689, *5 (D.P.R. 2006) (ADA, citing cases). The same conclusion has been drawn in this district regarding personal liability under Puerto Rico Law 80. See, Flamand v. American Intern. Group, Inc., 876 F.Supp. 356, 364 (D.P.R. 1994); Miro Martinez v. Blanco Velez Store, Inc., 393 F. Supp. 2d 108, 113 (D.P.R. 2005); Velez Nieves, 2006 WL 1805689 at *7-8.

Accordingly, Plaintiff's claims against co-defendants Aponte, Rivera, and Velez under Title VII, the ADEA, the ADA, and Puerto Rico Law 80 in their personal capacities are hereby **DISMISSED** with prejudice.

**B.     Section 1981a**

Section 1981a of the Civil Rights Act of 1991 provides a prevailing plaintiff in an intentional employment discrimination case the ability to recover compensatory and punitive damages from the defendant. See 42 U.S.C. § 1981a(a). It applies, not only to actions brought under Title VII of the Civil Rights Act of 1964, but also to actions brought under the ADA. See 42 U.S.C. § 1981a(a)(2). This statute, however, does not create a new substantive right or an independent cause of action; rather, it merely provides an additional remedy for "unlawful intentional discrimination . . . prohibited under . . . 42 U.S.C. § 2000e-2 or 2000e-3." 42 U.S.C. § 1981a(1)(1); see also Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998) (applying this analysis to hold that the Civil Rights Act of 1991 does not apply to render county commissioner personally liable for compensatory and punitive damages on employee's Title VII claim); Rivera Concepcion v. Puerto Rico, --- F.Supp.2d ----, 2010 WL 177624, *5 (D.P.R. 2010) (FAB) (determining that plaintiffs had no claim pursuant to Section 1981a, since "no independent claim may be raised" under that section, which pertains exclusively to remedies).

Therefore, the court hereby **DISMISSES** any independent claims brought by Plaintiff pursuant to Section 1981a.

**C.     Claims Under Articles 1802 & 1803 of the Puerto Rico Civil Code**

This court has previously addressed and adopted the argument now raised by Defendants, that inasmuch as Plaintiff's Article 1802 and 1803 claims are based on the same facts that give rise to asserted causes of action under Puerto Rico's special employment statutes –Laws 80 and 100– the former are superceded by the latter. See Medina v. Adecco, 561 F. Supp. 2d 162, 175-76 (D.P.R. 2008) (citing to Rosario v. McConnell Valdes, 2008 WL 509204, *1-2 (D.P.R. 2008)). This caselaw relies on the Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 1994 P.R. Eng. 909, 527 (1994), where the Supreme Court of Puerto Rico specifically addressed the interplay between causes of action under special employment statutes and Article 1802. The Santini Rivera court noted that special employment statutes "are a source of higher-ranking rights that supplant . . . those derived from ordinary legislation." 137 D.P.R. at 5 n.3. In his concurring opinon, Chief Justice Hernandez Denton, clarified that "[a]s a general rule rule, in the face of conduct by an employer that has been

typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code." Id., at p. 16 (official translation). Based on this language, this court has held that

> [T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

Rosario, 2008 WL 509204, *2; see also Suarez v. Venator Group, Inc., 2009 WL 4015655, *3-4 (D.P.R. 2009); Peña Alcantara v. Correctional Health Services, Corp., 2009 WL 890467, *5-6 (D.P.R. 2009).

A review of Plaintiff's complaint reveals that she bases her Article 1802 and 1803 claims on the same conduct that supports her employment law claims, and alleges no independent tortious conduct. The court must, therefore, **DISMISS** Plaintiff's Article 1802 and 1803 claims with prejudice.

### D.     Timeliness of Plaintiff's Law 100 Claim Against the Named Co-Defendants

The Supreme Court of Puerto Rico has held that the one-year statute of limitations found in Article 1868 of the Puerto Rico Civil Code applies to Law 100 claims. Olmo v. Young & Rubicam of P.R., Inc., 110 P.R. Dec. 740, 10 P.R. Offic. Trans. 965 (P.R. 1981); Matos Ortiz v. Commonwealth of Puerto Rico, 103 F. Supp.2d 59, 63-64 (D.P.R. 2000). A cause of action under Law 100 accrues on the date that the employee becomes aware of the adverse personnel action either through notification by the employer, see American Airlines v .Cardoza-Rodriguez, 133 F.3d 111, 124-25 (1st Cir.1998), or the effectuation of the decision. See Landrau-Romero v. Banco Popular de P. R., 212 F.3d 607, 615 (1st Cir. 2000) ("Law 100 . . . has a statute of limitations of one year.") (citing Iglesias v. Mutual Life Ins. Co., 156 F.3d 237, 240 (1st Cir. 1998)).

Additionally, the filing of a claim with the Anti-Discrimination Unit of the Puerto Rico Department of Labor constitutes an extrajudicial claim. See Leon-Nogueras v. University of Puerto Rico, 964 F. Supp. 585, 587-88 (D.P.R. 1997). Once the plaintiff has filed the claim and notified the employer-defendant of its filing, the one-year prescriptive period is suspended throughout the duration of the administrative proceedings and until the employer-defendant is notified of the

**Civil No. 09-1933 (GAG)**                                         8

agency's decision. Graulau v. Pegasus Communs. of P.R., 130 F. Supp. 2d 320, 334 (D.P.R. 2001); Cintron v. Gonzalez, 247 F. Supp. 2d 48, 55-56 (D.P.R. 2003).

Here, the last discriminatory act based on sex or gender against Plaintiff is alleged to have taken place on September 5, 2008. Therefore, Plaintiff's claim accrued on this date. On September 8, 2008, Plaintiff filed her administrative charge with the EEOC and the Anti Discrimination Unit of the Puerto Rico Department of Labor against McV. However, in the letter she attached to the charge, Plaintiff mentions co-defendants Aponte, Rivera and Velez as having participated in the events that allegedly led to her constructive discharge. Thus, it cannot be said that the named co-defendants were not included in Plaintiff's administrative charge. Cf. Vargas v. Fuller Brush Co. of P.R., Inc., 336 F. Supp. 2d 134, 143-44 (D.P.R. 2004). The court, therefore, **DENIES** Defendants' motion to dismiss Plaintiff's Law 100 claim against Aponte, Rivera and Velez at this time.

The court also **DENIES** Defendants' request that the court refuse to exercise supplemental jurisdiction over Plaintiff's Law 100 claim. Defendants merely indicate that "Plaintiff cannot state a cause of action against Co-Defendant's [sic] under [federal law]," and that,"[a]s such, there are no substantial federal claims against Co-Defendants in the lawsuit." (Docket No. 11 at 16.); see United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (power of federal court to determine state-law claims in nondiversity cases depends upon presence of at least one "substantial" federal claim). Defendants, however, simply mention Plaintiff's failure to state a federal claim without developing their argument. The court will not entertain such a perfunctory averment. See Gonzalez-Lasalle v. U.S., 2006 WL 1897031, *2 (D.P.R. 2006) ("it is the long standing precedent in this Circuit that legal arguments alluded to in a perfunctory manner but unaccompanied by a developed argumentation, are deemed abandoned.") (citing U.S. v. Casas, 425 F.3d 23, 30 (1st Cir. 2005); U.S. v. Ramirez-Ferrer, 1995 WL 237041 (1st Cir. 1995); U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)); Zannino, 895 F.2d at 17 ("it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). More so, McV remains a defendant at this junction, so it would also be premature to make this determination at this time.

**Civil No. 09-1933 (GAG)**                          9

### IV.     Conclusion

For the aforementioned reasons, the court **GRANTS in part and DENIES in part** defendants' motion to dismiss (Docket No. 11).  The following claims are **DISMISSED** with prejudice: (1) any claims against co-defendants Aponte, Rivera, and Velez in their personal capacities under Title VII, the ADEA, the ADA, and Puerto Rico Law 80; (2) any independent claims brought pursuant to Section 1981a of the Civil Rights Act of 1991; and (3) the Article 1802 and 1803 claims, asserted as Plaintiff's fourth cause of action.  Plaintiff's Title VII, ADEA, ADA and Law 80 claims against McV, as well as her claim against all defendants under Puerto Rico Law 100, remain.

**SO ORDERED**.

In San Juan, Puerto Rico this 22nd day of March, 2010.

*S/ Gustavo A. Gelpí*

GUSTAVO a. GELPÍ
United States District Judge