IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**CARMEN Z. REYES-ORTIZ,**

   Plaintiff,

   v.                                                     Civil No. 09-1933 (GAG)

**MCCONNELL VALDES a/k/a**

**MCCONNELL VALDES LLC, et al.,**

   Defendants.

**OPINION AND ORDER**

Plaintiff Carmen Z. Reyes-Ortiz ("Plaintiff" or "Reyes-Ortiz") brings this action alleging age, sex, and perceived disability discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 621 *et seq.* Plaintiff also brings state claims alleging violations of Puerto Rico Law 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a *et seq.*; and Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 *et seq.*[1] Plaintiff filed this claim against her employer McConnell Valdes LLC ("McV"), as well as the Manager of Human Resources for McV, Denise Aponte ("Aponte"), the Office Service Supervisor for McV, Rosin Rivera ("Rivera"), and Plaintiff's immediate supervisor, Betzaida Velez ("Velez").[2]

---

[1] Plaintiff also sought relief under Section 1981a of the Civil Rights Act of 1991 ("Section 1981a"), 42 U.S.C. § 1981a; and Article 1802 and 1803 of the Civil Code of Puerto Rico ("Article 1802 & 1803"), P.R. Laws Ann. tit. 31, §§ 5141, 5142. (See Docket No. 1.) The court dismissed Plaintiff's Section 1981a claims, as well as her Article 1802 and 1803 claims, on March 22, 2010. (See Docket No. 19.)

[2] The court dismissed claims against co-defendants Aponte, Rivera, and Velez in their

**Civil No. 09-1933 (GAG)**                                     2

Presently before the court is McV's motion for summary judgment (Docket No. 41). Plaintiff opposed the motion (Docket No. 49). By leave of the court, McV filed a reply brief (Docket No. 56). After reviewing these submissions and the pertinent law, the court **GRANTS** McV's motion at Docket No. 41.

**I.     Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

---

personal capacities under Title VII, the ADEA, the ADA, Puerto Rico Law 80 and Puerto Rico Law 100. (See Docket Nos. 19 and 26.)

**Civil No. 09-1933 (GAG)**                          3

however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.    Relevant Factual & procedural Background**

Given that the court's prior opinion (Docket No. 19) amply sets forth the background of this case, only the facts relevant to the instant disposition are hereby recapitulated. Plaintiff was over 40 years of age during the relevant time period.[3] She held the position of file room clerk at McV since 1996, when her previous employer, the former law firm of Ledesma, Palou & Miranda, merged with McV. (See Docket Nos. 41 ¶ 1; 49-1 ¶ 1.)

The tasks of a file room clerk at McV include, among others: tending to file requests by phone and in person, dispatching files, tracing lost files, searching for specific documents, moving the file stacks in the file room, filing documents in the corresponding files, placing files in the file stacks, opening new file volumes, and organizing files. (See Docket No. 47-2.) The file room clerk has to be able to move around the law firm, move file boxes that weigh between forty (40) and seventy-five (75) pounds, and be able to stand, sit, climb, kneel, squat, reach and push. (See Docket No. 47-5 at 4.)

Plaintiff was diagnosed with muscle atrophy on May 28, 2001. (See Docket No. 47-6.) She could not push things that required more than twelve (12) pounds of force. (See Docket Nos. 42 ¶ 6; 49-1 ¶ 6.) Because of this medical condition, Plaintiff requested a reasonable accommodation in August of 2001. McV complied with this request. (See Docket Nos. 42 ¶ 8; 49-1 ¶ 8; 47-1 at 23.) The reasonable accommodation included re-organizing the filing procedure and having other file room clerks help Plaintiff move shelves that required more than twelve (12) pounds of force. (See Docket No. 47-3.)

There were approximately five (5) employees (including Plaintiff) working in McV's file

---

[3] Plaintiff was born on September 28, 1951. (See Docket No. 14-2.)

**Civil No. 09-1933 (GAG)**                    4

room in 1996. (See Docket Nos. 41 ¶ 4; 49-1 ¶ 4.) Over the years, McV reduced the number of employees working as file room clerks, and by early 2008, there were two (2) file room clerks–Plaintiff and George De la Rosa ("De la Rosa"). (See Docket Nos. 42 ¶ 17; 49-1 ¶ 17.) Because Reyes could not carry out the file room work that required certain physical exertion–like moving heavy files or filing in the back file stacks–De la Rosa had to perform these tasks. (See Docket Nos. 42 ¶¶ 19, 21; 49-1 ¶¶ 19, 21.)

Plaintiff was informed of her transfer to the internal messenger position when she met with McV in August of 2008. Mario Urrutia, an internal messenger with a bachelors degree and some computer knowledge, would be transferred to her file room clerk position. (See Docket Nos. 42 ¶¶ 25-26; 49-1 ¶¶ 25-26.) In a letter dated September 5, 2008, McV informed Plaintiff that the transfer would not affect her salary and benefits. (See Docket No. 47-13.) The letter also addressed Plaintiff's concerns about a condition in her right knee and entertained the idea of a reasonable accommodation in this new position. Id. Plaintiff left McV on September 5, 2008. (See Docket Nos. 42 ¶ 31; 49-1 at 12 ¶ 40.) The transfer to the internal messenger position was to become effective on September 8, 2008. (See Docket No. 47-13 at 3.)

On September 8, 2008, Plaintiff filed a charge of discrimination with Puerto Rico's Anti-Discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff amended her EEOC complaint on March 3, 2009. On June 17, 2009, the EEOC notified Plaintiff of the termination of any further proceedings relating to her charge of employment discrimination and of her right to sue. Plaintiff filed her complaint in this case on September 15, 2009 (Docket No. 1). On March 22, 2010, the court granted co-defendants Aponte, Rivera and Velez's motion to dismiss (Docket No. 11) as to Plaintiff's claims under Section 1981a and Article 1802 and 1803, as well as to all claims against Aponte, Rivera and Velez in their personal capacities under Title VII, the ADEA, the ADA, and Puerto Rico Law 80. (See Docket No. 19.) The court

**Civil No. 09-1933 (GAG)**                    5

later dismissed, as time-barred, Plaintiff's Law 100 claims against Aponte, Rivera and Velez.[4]

### III.   Legal Analysis

In its motion for summary judgment, McV contends that Plaintiff cannot establish a case of age, sex or disability discrimination. (See Docket No. 41 at 2-3.) McV argues that Plaintiff cannot show that she suffered an adverse employment action or that the decision to transfer her to the internal messenger position was a pretext for illegal discrimination. (See Docket No. 41 at 2.)

### A.   ADA

The ADA prohibits discrimination against a qualified individual with a disability by reason of the individual's disability in all employment practices. See 42 U.S.C. § 12112(a).

In the absence of direct evidence of discrimination, a plaintiff may indirectly prove his or her case of disability discrimination "by using the *prima facie* case and burden shifting methods" first established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Katz v. City Metal Co., Inc., 87 F.3d 26, 30 n.2 (1st Cir. 1996) (citations omitted). Under the burden-shifting framework the plaintiff must demonstrate by a preponderance of evidence that he or she:

> (1) has a disability within the meaning of the ADA, (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations, (3) was subject to an adverse employment action by a company subject to the ADA, (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees, and (5) suffered damages as a result.

Rosado v. Wackenhut Puerto Rico, Inc., 160 Fed. Appx. 5, 10 (1st Cir. 2005) (citing Jacques v. Clean-UP Group, 96 F.3d 506, 511 (1st Cir. 1996)). Once this case is established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005) (citing

---

[4] Plaintiff's Law 100 claim accrued on September 5, 2008–or September 8, 2008, at the latest. Plaintiff's charge of discrimination with the EEOC and the ADU was filed on September 8, 2008. The present complaint was filed September 15, 2009. Co-defendants Aponte, Rivera and Velez were not personally notified of Plaintiff's administrative charge. Accordingly, the court found that the filing of the administrative charge did not toll the one-year statute of limitations as to the individually named co-defendants. (See Docket No. 26.)

**Civil No. 09-1933 (GAG)**                                                6

McDonnell, 411 U.S. at 802)). If such a reason can be established, the *prima facie* case fails unless the plaintiff can provide evidence that the employer's reasoning was merely pretext for the discriminatory intent. Id.

As to the first element, the ADA defines "disability" as: "(1) a physical or mental impairment that substantially limits one or more of a person's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment." Sanchez-Figueroa v. Banco Popular de Puerto Rico, 527 F.3d 209, 214 (1st Cir. 2008) (citing 42 U.S.C. § 12102(2)). Plaintiff does not claim that McV discriminated against her because of her disability, but rather that the adverse actions were based on a "perceived disability."[5] (See Docket No. 1 ¶ 58.) Thus, the court will address the third definition of "disability" under the ADA–being "regarded" as having such an impairment–and forgo discussion on whether Plaintiff is in fact disabled under the statute.

There are two ways a person may be "regarded as" disabled under the ADA: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). "A plaintiff claiming that [she] is 'regarded' as disabled cannot merely show that [her] employer perceived [her] as somehow disabled; rather, [she] must prove that the employer regarded [her] as disabled *within the meaning of the ADA*." Bailey v. Georgia-Pacific Corp., 30 F.3d 1162, 1169 (1st Cir. 2002) (emphasis in original) (citing Giordano v. City of N.Y., 274 F.3d 740, 748 (2nd Cir. 2001)). Under the ADA, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the

---

[5] Plaintiff's complaint alleges "that McV treated her *as though* she suffered from an impairment that substantially limited impeded [sic] her from continuing to perform her duties as an office clerk in the filing room, that is, the major life activity of work [sic]." (See Docket No. 1 ¶ 58) (emphasis added). Additionally, Plaintiff contends in her opposition to summary judgment that "McV clearly regarded [her] as having a substantially limiting impairment." (See Docket No. 49 at 14.) Plaintiff specifically points out that her ADA claim "is based on the 'regarded as' class." (See Docket No. 49 at 7-8.)

**Civil No. 09-1933 (GAG)**                                              7

employee as disabled or that the perception caused the adverse employment action." <u>Castro-Medina v. Procter & Gamble Commercial Co.</u>, 565 F. Supp. 2d 343, 366 (D.P.R. 2008) (internal quotation marks omitted) (quoting <u>Rivera-Mercado v. Scotiabank de Puerto Rico-International</u>, 571 F. Supp. 2d 279, 287 (D.P.R. 2008)).

"Only those impairments which substantially limit a major life activity" are protected under the ADA. <u>Lessard v. Osram Sylvania, Inc.</u>, 175 F.3d 193, 197 (1st Cir. 1999). The First Circuit assumes that "working" constitutes a major life activity. See <u>Guzman-Rosario v. United Parcel Serv. Inc.</u>, 397 F.3d 6, 11 (1st Cir. 2005). For a plaintiff to show that her employer perceived her to be substantially limited in the major life activity of working, she "must show that [she] was perceived as being unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." <u>Bailey</u>, 30 F.3d at 1169-70. The First Circuit has "required claimants to show that they were precluded from more than the performance of a particular job." <u>Guzman-Rosario</u>, 397 F.3d at 11 (citing <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 240 (1st Cir. 2002); <u>Lebron-Torres v. Whitehall Labs.</u>, 251 F.3d 236, 240 (1st Cir. 2002)); see also <u>Whitlock v. Mac-Grey, Inc.</u>, 345 F.3d 44, 46 (1st Cir. 2003) (finding that to support a claim for being "regarded as" disabled, a plaintiff must come forward with evidence that the employer perceived him as precluded from more than a singular job). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." <u>Lessard</u>, 175 F.3d at 197 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "[T]here is no disability unless the major life activity of working is impaired." <u>Id.</u>

In its motion for summary judgment, McV contends it did not consider Plaintiff to have an impairment that substantially affected her ability to engage in the major life activity of working. If anything, McV argues that it regarded Plaintiff as restricted in performing the singular particular job of a file room clerk.[6] (<u>See</u> Docket No. 41 at 12-13.) Plaintiff argues in her opposition that she was

---

[6] McV further argues that its decision to transfer her to the internal messenger position evidences that it did not regard Plaintiff to have an impairment that substantially affected the major

**Civil No. 09-1933 (GAG)**                                  8

restricted in the performance of a class of jobs which required physical exertion and prolonged mobility. (See Docket No. 49 at 14-15; 15 n.4.)

Plaintiff's evidence consists of her deposition (Docket No. 54-2) and McV's Director of Human Resources Denise Aponte's deposition (Docket No. 54-1). After a review of the record, the court finds it lacks any evidence that McV regarded Plaintiff as unable to perform a class of jobs which physical exertion and prolonged mobility were required. On the contrary, the record shows that when McV determined Plaintiff was not capable of performing some of the essential functions of a file room clerk, it offered her a position that very much required mobility–that of an internal messenger. (See Docket No. 47-13.) As described by Denise Aponte in her deposition, the internal messenger or "runner" position required walking throughout assigned floors, picking up and distributing light correspondence.[7] (See Docket Nos. 54-1 at 34; 59-1 at 3-4.) Plaintiff even regards the internal messenger position as being essentially a physical job.[8]

After viewing the evidence in the light most favorable to Plaintiff, the court finds that Plaintiff has not put forth evidence on which a trier of fact could reasonably conclude that McV viewed her as unable to perform a class of jobs or a broad range of jobs in various classes. Consequently, her "regarded as" claim must fail. Bailey, 30 F.3d at 1170 (citing Murphy v. United Parcel Serv. Inc., 527 U.S. 516, 524 (1999) (concluding that summary judgment in a ADA case is

---

life activity of working. (See Docket No. 41 at 13.)

[7] The heavier boxes and large correspondence are not delivered by the "runner," but by the messenger who comes from the post-office. (See Docket No. 59-1 at 4-5.)

[8] Plaintiff states as an uncontested fact that McV decided to transfer her to a "runner" position and that "the irony of this moniker is not lost on [her]" because "[b]y simple and pure definition, the word 'runner' implies a person who runs." Plaintiff goes on to say that this was what was expected from Plaintiff, to run through McV's floors delivering and receiving correspondence. (See Docket No. 49 at 10 n.3.) The 'runner' position as defined by Plaintiff fits into the class of jobs which requires physical exertion and prolonged mobility. Plaintiff argues that the physical part of the 'runner' position was the essence of this position. (See Docket No. 49 at 15.)

**Civil No. 09-1933 (GAG)**                                   9

proper where plaintiff fails to show that he or she is "regarded as unable to perform a class of jobs")); see also Whitlock, 345 F.3d at 46 (explaining that plaintiff must come forward with evidence that the employer perceived him or her as precluded from more than a particular job in order to support a "regarded as" claim).

Furthermore, even if Plaintiff did show she was "regarded as" disabled by McV, she still does not establish suffering an adverse employment action. Plaintiff claims her transfer to the internal messenger position constituted a constructive discharge because she was given "no choice but to accept [that] position or leave the law firm." (See Docket No. 49 at 10.)

"Constructive discharge is a label for 'treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position.'" Leavitt v. Wal-Mart Stores, Inc., 74 Fed. Appx. 66, 69 (1st Cir. 2003) (quoting Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 36 (1st Cir. 2001)). "The ADA supports a claim of constructive discharge." Rodriguez v. Loctite Puerto Rico, Inc., 967 F. Supp. 653, 667 (D.P.R. 1997). It exists where "working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000) (citing Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993)).

An employee's subjective beliefs, no matter how sincerely held, cannot trigger this standard; "[t]he ultimate test is one of objective reasonableness." Id. A plaintiff must establish that "working conditions were so unpleasant that staying on the job while seeking redress would have been intolerable." Leavitt, 74 Fed. Appx. at 69 (quoting Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (D.P.R. 2002)). "A constructive discharge can arise from, among other things, 'reassignment with significantly diminished job responsibilities, or a decision causing a significant change in benefits.'" Leavitt, 74 Fed. Appx. at 69 (citing Burlington Indus., Inc.U, v. Ellerth, 524 U.S. 742, 761 (1998)). Nonetheless, the First Circuit has expressed that "a reduction in responsibility, unaccompanied by a diminution in salary or some other marked lessening of the quality of working conditions, does not constitute a constructive discharge." Leavitt, 74 Fed. Appx. at 69 (citing Suarez, 229 F.3d at 55).

**Civil No. 09-1933 (GAG)**                    10

In the present case, Plaintiff does not produce any evidence that McV imposed working conditions so onerous, abusive, or unpleasant that no reasonable employee would tolerate continuing in the position. Plaintiff would still enjoy a seven and a half (7.5) hour workday.[9] "Runners" are not required to move heavy boxes or files. (See Docket No. 54-1 at 36.) According to Aponte's deposition, Plaintiff, as a runner, "basically had to walk the same amount when she worked in the file room." (See Docket No. 54-1 at 38.) Aponte further declared that Plaintiff would not have to push things "weighing more than twelve (12) pounds or lift much weight" as an internal messenger. (See Docket No. 54-1 at 39.)

A letter dated September 5, 2008, shows that McV informed Plaintiff that her salary and benefits would remain the same and addressed her concerns about a condition in her right knee. (See Docket No. 47-13.) To that effect, McV assured Plaintiff that "the position offered does not require you to walk great distances, nor in speedy manner [sic]." (See Docket No. 47-13 at 3.) McV further informed Plaintiff that if a reasonable accommodation was necessary for her to be able to perform the essential functions of the internal messenger position, it would entertain and evaluate such a request.[10] (See Docket No. 47-13 at 3.) Moreover, Plaintiff left McV before her transfer even became effective.[11]

Even taking the evidence in the light most favorable to Plaintiff, the court cannot find that Plaintiff's transfer from a file room clerk position to an internal messenger position–with the same

---

[9] File room clerks and "runners" work the same seven and half (7.5) hour workday. (See Docket No. 54-1 at 34.)

[10] In her letter to McV, Plaintiff concedes she has not requested any reasonable accommodation for the internal messenger position. (See Docket No. 47-10 at 3.)

[11] Plaintiff left McV on September 5, 2008. (See Docket Nos. 42 ¶ 31; 49-1 at 12 ¶ 40.) Her transfer to the internal messenger position was to become effective on September 8, 2008. (See Docket No. 47-13 at 3.)

**Civil No. 09-1933 (GAG)**                    11

working hours, salary and benefits, and with the opportunity to request a reasonable accommodation–"would have caused a *reasonable* employee in the same or similar circumstances to throw up his hands and leave." Suarez, 229 F.3d at 54 (emphasis in original); see also Jorge v. Rumsfeld, 404 F.3d 556, 562 (1st Cir. 2005) (finding no constructive discharge where employee refused to accept transfer that entailed "no loss of pay, benefits, status, or the like."). No reasonable fact finder could conclude that Plaintiff's working conditions were so onerous, abusive, or unpleasant that she was compelled to resign rather than stay on the job while seeking redress–such as by suing McV for failing to comply with a request for a reasonable accommodation.

As Plaintiff's failure to meet any of the *prima facie* elements is dispositive of the entire claim, the court need not address the remaining three elements. See Mulloy v. Acushnet Co., 460 F.3d 141, 154 n.8 (1st Cir. 2006).

Plaintiff has failed to present evidence to satisfy the elements of her ADA claim. Accordingly, the court **GRANTS** McV's motion for summary judgment as to Plaintiff's ADA claim, and **DISMISSES** the same.

**B.     ADEA**

The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The court applies the previously described McDonnell-Douglas burden shifting framework in assessing an ADEA claim where there is no direct evidence of discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (assuming that the McDonnell Douglas framework applies to an ADEA claim); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1117 (1st Cir. 1993) (finding that in absence of direct evidence of age discrimination, an ADEA claim is governed by burden-shifting framework set forth in McDonnell Douglas).

A *prima facie* case of age discrimination under the ADEA, requires a plaintiff to demonstrate: (1) that she was at least 40 years old; (2) that she has met her employer's legitimate job performance expectations; (3) that she suffered an adverse employment action; and (4) that the employer had a continuing need for the services provided previously by the plaintiff. See

**Civil No. 09-1933 (GAG)**                                     12

Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007) (citations omitted).

McV concedes that Plaintiff is over forty (40) years of age and that "she was performing the *limited functions* she executed to [its] satisfaction." (See Docket No. 41 at 25) (emphasis in original). In regard to the third element, Plaintiff contends that McV's decision to transfer her to the internal messenger position was a constructive discharge because she either had to accept the position or leave. (See Docket no. 49 at 10.) However, the court previously found that Plaintiff has failed to present any evidence to support her constructive discharge claim.

"[P]laintiff's failure to present a triable question of material fact as to her having suffered an adverse employment action dooms an ADEA claim from the start." Estades-Negroni v. Associates Corp. of North America, 377 F.3d 58, 63 (1st Cir. 2004). Because the court cannot determine, based on this record, that Plaintiff suffered an adverse employment action, she fails to make out a *prima facie* case for age discrimination.

Moreover, the court has examined the record, which includes Plaintiff's deposition, and cannot find a single instance of age discrimination.[12] Plaintiff has not produced evidence to support her conclusory argument that she was discriminated because of her age. Consequently, the court **GRANTS** McV's motion for summary judgment as to Plaintiff's ADEA claim and **DISMISSES** the same.

**C.    Title VII**

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against a person with respect to "compensation, terms, conditions, or privileges of employment," because of the person's sex. 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII sex discrimination claim, the plaintiff's sex "must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" Gomez-Gonzalez v. Rural Opportunities, Inc., 658

---

[12] In her deposition, age is mentioned once. When asked on what specific fact she based that McV discriminated against her because of her age, Plaintiff responded: "[b]ecause I am fifty-nine years old, of course" and could not perform the same way she did when she started. (See Docket No. 54-2 at 8.)

**Civil No. 09-1933 (GAG)**                13

F. Supp. 2d 325, 341 (D.P.R. 2009) (quoting Reeves, 530 U.S. at 141).

Plaintiff claims that she was discriminated against due to her gender because a male employee was transferred to her file room clerk position. (See Docket No. 49 at 10.) Plaintiff's Title VII claim does not fare any better than her ADA and ADEA claims.

As with claims under the ADA and the ADEA, the McDonnell Douglas framework applies in Title VII claims where there is no direct evidence of sex discrimination. See Gomez-Gonzalez, 658 F. Supp. 2d at 341. Under this framework, Plaintiff must first establish a *prima facie* case of sex discrimination by adducing evidence that: (1) she is a woman; (2) her job performance exceeded the employer's legitimate expectations; (3) the employer actually or constructively discharged her; and (4) the employer had a continuing need for her services. See id. (citing Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23 (1st Cir. 2008).

As previously discussed, Plaintiff has failed to demonstrate that she was constructively discharged and therefore cannot establish a Title VII sex discrimination claim. Furthermore, Plaintiff's claim that she was discriminated against due to her gender is an unsupported conclusion. Plaintiff provided no evidence to support this claim. Such conclusory statements cannot defeat summary judgement. See Magarian v. Hawkins, 321 F.3d 235, 240 (1st Cir. 2003) ("'Conclusory allegations, improbable inferences, and unsupported speculation' are insufficient to defeat summary judgment.") (quoting LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)). Accordingly, the court **GRANTS** McV's summary judgment motion on these grounds and **DISMISSES** Plaintiff's Title VII claim.

**D.     Local Law Claims**

In addition to her federal claims, Plaintiff pleads supplemental state law claims under Law 80 and Law 100.

**1.     Law 80**

Law 80 provides a remedy for unjust dismissal. See P.R. Laws Ann. tit. 29, § 185b. A

**Civil No. 09-1933 (GAG)**                14

constructive discharge is considered a dismissal under Law 80.[13]  See Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148, 155 (D.P.R. 2008)  "The Puerto Rico Supreme Court has established that in order for the voluntary and unjustified acts by the employer to constitute an implicit or constructive discharge, the plaintiff must prove that the only reasonable alternative that she had was to resign." Id. (citations omitted). "The plaintiff must also clearly detail the acts that allegedly motivated her resignation and demonstrate the magnitude of the onerous working conditions." Id. (citations omitted).

"Puerto Rico law on what constitutes a constructive discharge is virtually identical to the federal law standard." Crespo v. Schering Plough Del Caribe, Inc., 231 F. Supp. 2d 420, 433 n. 49 (D.P.R. 2002) (citations omitted). Plaintiff concedes that her Law 80 claim is supported by the same factual allegations as her federal claims. (See Docket No. 49 at 19.) As discussed above, there is no evidence in the record to support Plaintiff's constructive discharge claim.  Due to the aforementioned reasons, the court **GRANTS** McV's motion for summary judgment on Plaintiff's Law 80 claim.

   **2.    Law 100**

Law 100 is the Puerto Rico anti-discrimination statute. See P.R. Laws Ann. tit. 29, § 146. The analysis under the ADEA and Law 100 is practically the same. See Mojica v. El Conquistador Resort and Golden Door Spa, 714 F. Supp. 2d 241, 262 (D.P.R. 2010).  "As applied to age discrimination, [Law 100] differs from the ADEA only with respect to how the burden-shifting framework operates." Davila, 498 F.3d at 18 (citing Cardona Jimenez v. Bancomerico de P.R., 174 F.3d 36, 42 (1st Cir. 1999)). Under Law 100, a plaintiff has two requirements to establish a *prima facie* case: (1) she must demonstrate that she was actually or constructively discharged; and (2) she

---

[13] "[D]ischarge shall be understood to be . . . the resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, such as imposing or trying to impose on him more onerous working condition, reducing his salary, lowering his category or submitting him to derogatory criticism or humiliations by deed or word." Rivera v. DHL Global Forwarding, 536 F. Supp. 2d 148, 155 (D.P.R. 2008) (citing P.R. Laws Ann. tit. 29, §§ 185a *et seq*.)).

**Civil No. 09-1933 (GAG)**                             15

must allege that the decision was discriminatory. <u>Hoyos v. Telecorp Communications, Inc.</u>, 488 F.3d 1, 6 (1st Cir. 2007) (citations omitted).

As discussed above, Plaintiff has failed to establish she suffered an adverse employment action through constructive discharge. Consequently, her Law 100 claim cannot succeed. <u>See Velazquez-Fernandez</u>, 476 F.3d at 12 (citing <u>Suarez</u>, 229 F.3d at 54) (finding that the plaintiff had not established a *prima facie* case under the ADEA or Law 100 because he had not shown an actual or constructive discharge as a matter of law). Accordingly, the court **GRANTS** summary judgment on Plaintiff's Law 100 claim and **DISMISSES** the same.

## IV.   Conclusion

For the foregoing reasons, the court **GRANTS** McV's motion for summary judgment at Docket No. 41.

**SO ORDERED**

In San Juan, Puerto Rico this 28th day of April, 2011.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge